UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LONG THUC HUYNH, | ) ) ) | |
| Petitioner, | ) ) ) | |
| | ) | Civil Action No. 25-CV-13794-AK |
| v. | ) ) | |
| DAVID WESLING, Acting Director of the Boston Field Office, U.S. Immigration and Customs Enforcement, TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, MICHAEL KROL, HSI New England Special Agent in Charge, and KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, | ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

## MEMORANDUM AND ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS

**ANGEL KELLEY, D.J.**

Before the Court is Petitioner Long Thuc Huynh's Writ of Habeas Corpus. [Dkt. 1]. Petitioner alleges he is being unlawfully detained in violation of 8 U.S.C. § 1231 and the Fifth Amendment Due Process Clause. For the reasons below, Petitioner's Writ of Habeas Corpus [Dkt. 1] is **GRANTED**.

**I.    BACKGROUND**

Petitioner is a noncitizen from Vietnam who has lived in the United States for approximately thirty-seven years. [Dkt. 1 ¶ 2]. Petitioner was fathered by an American soldier during the Vietnam War and grew up in Vietnam where he faced significant discrimination as an "Amerasian" child. [Id. ¶ 22]. In 1988, at 16 years old, Petitioner entered the United States as a

1

Lawful Permanent Resident under an AM1 status. [Id. ¶ 23]. In 1996, Petitioner pleaded guilty in a federal criminal case in the Northern District of California.[1] [Id. ¶ 24; dkt. 11-2 at 6-7]. As a result, on January 30, 1998, the United States Immigration and Naturalization Service served a Notice to Appear to commence removal proceedings against Petitioner and transferred him to immigration custody. [Id. ¶ 25; dkt. 11-1 ¶ 8; dkt. 11-2 at 6-7]. On or around May 4, 1998, Petitioner was ordered removed to Vietnam by an Immigration Judge due to his criminal conviction. [Dkt. 1 ¶ 26; dkt. 11-2 at 9]. Petitioner appealed this order but withdrew the appeal around November 1998. [Dkt. 11-1 ¶ 10]. In 1999, while Petitioner was still in immigration detention, immigration officials tried to request travel documents for his removal to Vietnam; however, Vietnam would not accept him for removal even after he filled out paperwork to request travel documents. [Dkt. 1 ¶ 27; dkt. 11-1 ¶¶ 11]. Petitioner was released in or around August 1999 on an order of supervision. [Dkt. 11-1 ¶¶ 11].

In 2008, the United States and Vietnam signed a Memorandum of Understanding ("MOU") allowing for the deportation of certain Vietnamese nationals with final orders of removal who entered the United States after July 1995, under which Petitioner was not eligible for repatriation. [Dkt. 1 ¶ 28]. In or about April 2009, Petitioner's order of supervision was revoked, and he was placed in Immigration and Customs Enforcement ("ICE") Custody. [Dkt. 11-1 ¶ 12]. The Court has not been informed about the reason for Petitioner's 2009 re-detention. On or about November 2009, Petitioner was again released from ICE custody on an order of supervision. [Id.; dkt. 11-2 at 21].

---

[1] In 1996, Petitioner plead guilty to "the offense of Distribution of Cocaine in violation of Title 21, United States Code, Section 841(a)(1)." [Dkt. 11-2 at 6]. In 2003, Petitioner received a continuance without a finding for operating under the influence of liquor. Since 2007, Petitioner has pled guilty to armed robbery, receipt of stolen property, uttering a false check, assault and battery, and possession of a class A drug. [Dkt. 9-1 at 19-23]. His last conviction was in 2014. [Dkt. 19].

In 2020, the United States and Vietnam signed a subsequent MOU to accept certain individuals with removal orders who arrived in the United States prior to July 1995. [Dkt. 1 ¶ 29]. However, individuals must meet specific requirements listed in the MOU before Vietnam will issue travel documents. [Id.].

On December 2, 2025, Petitioner emailed Immigration and Customs Enforcement ("ICE") for a pre-scheduled check in, as required by his order of supervision. [Id. ¶ 31-32]. In response, ICE instructed him to go to the ICE Boston Field Office in Burlington, Massachusetts. [Id. ¶ 33-34]. After arranging transportation and attending a necessary medical appointment, on December 10, 2025, Petitioner went to his check-in as requested. [Id. ¶ 35]. At the check-in, Petitioner completed a form to assist with the request for his travel documents and provided ICE officers with requested personal information. [Dkt. 11-1 ¶ 22-26; dkt. 11-3 ¶ 8]. Petitioner was informed that he was being taken into custody because Vietnam is accepting some people for deportation. [Dkt. 11-1 ¶ 27]. The record does not contain evidence that Petitioner was provided with a Notice of Revocation of Release.[2] After filling out the requested paperwork, Petitioner was arrested and placed in immigration custody and detention. [Dkt. 1 ¶ 35].

## II.     LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c). The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

---

[2] The Court abstains from addressing the apparent lack of notice because Petitioner has not raised this issue.

## III.   DISCUSSION

### A.  Statutory Framework

ICE has the authority to detain and remove noncitizens with final orders of removal pursuant to 8 U.S.C. § 1231.  Section 1231(a)(1)(A) directs immigration authorities to remove a noncitizen with a final order of removal within a 90 day "removal period."  During this removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2).

If the mandatory removal period expires, ICE may either release the noncitizen pursuant to an order of supervision as directed by Section 1231(a)(3) or continue to detain the noncitizen under Section 1231(a)(6).  Under Section 1231(a)(6), ICE may continue detention beyond the removal period for individuals either inadmissible to the United States pursuant to 8 U.S.C. § 1182; subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or for whom immigration authorities have determined to be a risk to the community or unlikely to comply with the order of removal.  If a noncitizen falls under any of these categories and is nonetheless released, their release "shall be subject to the terms of [8 U.S.C. § 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

Section 1231(a)(3) dictates that noncitizens who are not deported within the removal period, "shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  Pursuant to this mandate, ICE has issued regulations contained at 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 setting forth procedures concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal.  Section 241.4 provides general grounds for re-detaining noncitizens who are subject to a final order of removal and released under supervision. 8 C.F.R. § 241.4(l).  Section 241.13 "establishes special review procedures" for noncitizens who are subject to final orders of removal, detained beyond

4

the removal period, and "provided good reason to believe there is no significant likelihood of removal to the country to which [they were] ordered removed . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). To re-detain a noncitizen under Section 241.13, ICE is obligated to provide specific facts supporting "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).

Where ICE is attempting to re-detain a noncitizen, this individualized determination must be conducted prior to re-detention. 8 C.F.R. § 241.13(i)(2); see Munagi v. McDonald, 2025 WL 3688023 (D. Mass. Dec. 19, 2025) ("[T]he changed circumstances that make [a noncitizen's] removal likely in the foreseeable future must have existed at or before the [order of supervision] revocation; post-hoc justifications are inadequate."); Tran v. Hyde, 25-CV-12546-ADB, 2025 WL 3724853, at *3 (D. Mass. Dec. 24, 2025) (looking at factors for determining reasonably foreseeable release based upon "relevant information that would have been available at the time that [petitioner] was redetained."); Sarail A. v. Bondi, 25-CV-2144 (ECT/JFD), 2025 WL 2533673, at *11 (D. Minn. Sep. 3, 2025) ("In Petitioner's case, there is no evidence that ICE considered any of these [8 C.F.R. § 241.13(f)] factors *before* the Notice [of Reasons for Revocation] was issued.") (emphasis in original). In deciding whether the requisite changed circumstances exist, ICE relies on the factors enumerated in 8 C.F.R. § 241.13(f). Kong, 62 F.4th at 620. Courts considering a challenge to re-detention must review ICE's determination "in light of" those same factors. Id. After noncitizens have challenged whether their detention is reasonably foreseeable, courts place the burden on ICE to prove that removal is significantly

likely in the reasonably foreseeable future. See Tran v. Hyde, 2025 WL 3724853, at *2 (citing cases).

### B.  Detention Authority Under Section 1231

First, the Court must determine which statutory authority governs this case. Respondents argue that Petitioner's detention is governed by Section 1231(a)(6) because he is removable from the United States due to his 1996 criminal conviction. [Dkt. 9 at 5]. In opposition, Petitioner argues that his detention is governed by Section 1231(a)(3) because he was released on an order of supervision. [Dkt. 11 at 4-5]. Assuming without deciding whether Petitioner falls under one of the three categories for which Section 1231(a)(6) permits extended detention, Petitioner's re-detention is still governed by Section 1231(a)(3).

Under Section 1231(a)(6), noncitizens falling under the three categories that permit extended detention, "if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6); see Kong, 62 F.4th at 619 ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by [Section 1231(a)(3)'s implementing regulations]"); Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (8 U.S.C. § 1231(a)(3) governs where ICE released noncitizen subject to supervision). After the issuance of Petitioner's order of removal in 1999 and re-detention in 2009, he was released under an order of supervision. Therefore, by the plain language of the statute, his re-detention is subject to Section 1231(a)(3) and its implementing regulations. 8 U.S.C. § 1231(a)(6).

Next, the Court must determine which regulatory authority governs. Respondents argue that Petitioner's re-detention was lawful under Section 1231(a)(3)'s implementing regulations contained in both 8 C.F.R. § 241.4 (the general provision) and 8 C.F.R. § 241.13 (the specific provision). Petitioner challenges the likelihood that he will be deported within a reasonable

period of time. [Dkt. 1 ¶¶ 37-38]. ICE is, therefore, subject to the constraints of Section 241.13. 8 C.F.R. § 241.13(a); see Kong, 62 F.4th at 619-20 (applying Section 241.13 where the petitioner alleged his deportation was not significantly likely in the reasonably foreseeable future); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. June 20, 2025) (same); Tran v. Hyde, 2025 WL 3724853, at *2 (same); Poeuv v. Smith, 169 F. Supp. 3d 297, 299-300 (D. Mass. 2016) (same).

To meet their burden under Section 241.13, Respondents must show (1) a change circumstance in Petitioner's case and (2) that changed circumstance has resulted in a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Kong, 62 F.4th at 619-20. Respondents have not established either.

### 1. Change of Circumstance

To start, Respondents argue that the 2020 MOU constitutes a "change of circumstances" under Section 241.13. Respondents' only evidence that the 2020 MOU applies to Petitioner is an affidavit saying "[t]he United States currently has a repatriation agreement with Vietnam, which allows for the repatriation of Vietnamese citizens who may have entered the United States as refugees before July 12, 1995" [Dkt. 9-1 ¶ 11], and the allegation that "[t]he 2020 MOU covers individuals such as Petitioner who entered prior to 1995 as Petitioner also recognizes" [Dkt. 9 at 8].

Respondents have not provided the Court with a copy of the 2020 MOU, cited any of its provisions, or discussed how it specifically applies to Petitioner. Respondents, therefore, have not established that Petitioner is subject to the 2020 MOU. See Nguyen v. Hyde, 788 F. Supp. 3d at 151 (noting "Respondents do not even state how and whether the 2020 MOU applies to [the petitioner] specifically").

Contrary to Respondents assertion, Petitioner does not admit that "[t]he 2020 MOU covers individuals such as Petitioner who entered prior to 1995." [Dkt. 9 at 8]. Petitioner acknowledged that the 2020 MOU applies to Vietnamese citizens who arrived in the United States prior to 1995. But he further asserts that "individuals must meet the specific requirements listed in the MOU before Vietnam can issue travel documents for a pre-1995 noncitizen with a final order of removal," and contests whether the 2020 MOU applies to him. [Dkt. 1 ¶¶ 29, 38].

Respondents encourage this Court to follow the decision in Nguyen v. Noem, where the court addressed whether the 2020 MOU constituted a "change of circumstances" under 8 C.F.R. § 241.13(i)(2). 797 F. Supp. 3d 651, 665-66 (N.D. Tex. 2025). In that case, the petitioner argued that a "change of circumstance" under Section 241.13 must be unique to the particular detained noncitizen and cannot apply to a group of noncitizens. The court rejected this argument holding that "there is no reason that a broad change in circumstances that applies to a broad group of [noncitizens] cannot have the effect of changing the circumstances of each of those particular [noncitizens] and thus let ICE determine that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. at 66. In reaching its decision, the court reiterated that "[t]he changed circumstances need to be applicable to [the petitioner]." Id. Here, Petitioner challenges whether the 2020 MOU is applicable to him, not whether it would constitute a change of circumstance if it did apply to him. As such, Nguyen v. Noem does not address the issue present in this case.

2. **Section 241.13(f) Factors**

Next, even if the 2020 MOU applies to Petitioner, Respondents have not shown that Petitioner is significantly likely to be deported in the reasonably foreseeable future. Under 8 C.F.R. § 241.13(f), ICE must consider "all the facts of the case" when determining whether re-

8

detention is supported by changed circumstances. These facts include, but are not limited to (a) the history of the noncitizen's "efforts to comply with the order of removal," (b) the history of ICE's efforts to remove noncitizens to the country in question or to third countries, (c) the ongoing nature of ICE's efforts to remove the noncitizen in question, and that individual's assistance with those efforts, (d) the reasonably foreseeable results of ICE's removal efforts, and (e) the views of the Department of State regarding the prospects for removal of noncitizens to the country in question. 8 C.F.R. § 241.13(f).

The first and final factors provide little guidance. Respondents have not produced evidence regarding the Department of State's view on the prospects for removal of noncitizens to Vietnam. As to Petitioner's history of efforts to comply with his order of removal, Petitioner voluntarily and promptly complied with ICE's request to go to the field office. [Dkt. 1 ¶¶ 32-34]. Additionally, Petitioner has twice provided information to assist efforts to obtain travel documents. [Dkt. 11-2 at 16; dkt. 11-3 ¶¶ 7-9]. But, because there is no evidence that ICE "actually commenced any effort to remove him at the time he was redetained, it is not clear how this factor could bear on the changed circumstances inquiry." Tran v. Hyde, 2025 WL 3724853, at *3.

To the second enumerated factor, ICE has a successful recent history of removing noncitizens to Vietnam. As of December 15, 2025, in 2025, ICE submitted 296 travel document requests with the Vietnamese government for noncitizens in the United States who entered prior to 1995. [Dkt. 9 at 16]. Of those 296 travel document requests, 207 noncitizens had been removed. [Id.]. This factor, therefore, tips in Respondents' favor.

The third enumerated factor, the ongoing nature of ICE's efforts to remove Petitioner, weighs heavily in Petitioner's favor. At the time of Petitioner's detention, the only reasons that

ICE had for re-detaining Petitioner were that (1) other pre-1995 arrivals had successfully been removed and (2) Petitioner had completed a self-declaration form. These limited efforts do not provide a basis upon which to detain Petitioner. See Tran v. Hyde, 2025 WL 3724853, at *3. Respondents' current efforts towards obtaining Petitioner's travel documents may not be used as a reason for detention, because those efforts had not occurred at the time of Petitioner's detention. Id. at *3 (looking at factors based upon "information that would have been available at the time that [petitioner] was redetained.").

Even considering ICE's current efforts to obtain Petitioner's travel documents, the third factor weighs in Petitioner's favor. The only evidence of ongoing efforts is the declaration of an Assistant Field Office Director for the Department of Homeland Security ("DHS") stating, "[Enforcement and Removal Operations] Boston is currently in the process of preparing the travel document request to be sent through the proper channels to the Government of Vietnam." [Dkt. 9-1 ¶ 14]. Respondents have not identified "what concrete steps ICE has taken to process Petitioner's particular travel document." Nguyen v. Hyde, 788 F. Supp. 3d at 152.

A request for a travel document requires specific documents, including a recently taken passport photograph, documents from Vietnam (e.g., birth certificate, household registration book, or identification card), and a fully completed self-declaration form. [Dkt. 11-4 ¶ 8]. The self-declaration form requires detailed and specific information about the noncitizen, including residential history, history of arrival in the United States, work history, and information about relatives living in and out of Vietnam. [Id.]. Once ICE obtains the completed self-declaration and identity documents, the travel document request is then forwarded to the Detention and Deportation Officer assigned to Vietnam cases within Enforcement Removal Operations

10

Headquarters, where the submission must be translated before being sent to the Vietnamese government. [Id. at ¶ 9].

The Court has no information about the stage of ICE's efforts to complete the travel document request, how long these efforts are likely to take, or the success of these efforts so far. This dearth of evidence about the travel document request weighs heavily against allowing continued detention. Nguyen v. Hyde, 788 F. Supp. 3d at 152.

Respondents urge this Court to follow the non-binding authority of Tran v. Baker, 25-cv-01598-JRR, 2025 WL 2085020 (D. Md. July 24, 2025), where the court found deportation was significantly likely in the reasonably foreseeable future. In Tran v. Baker, ICE had already submitted their travel document request to the Vietnamese government and provided the noncitizen with an individualized deadline by which to expect a meeting with the Vietnamese consulate. Id. at *5. In contrast, here, there is no evidence that the request for Petitioner's travel document has been completed, let alone submitted to the Vietnamese government.

As to the fourth enumerated factor, the reasonably foreseeable results of ICE's removal efforts, also weighs against allowing continued detention because of the Vietnamese government's ultimate discretion over grants of travel documents and the likely delays in the issuance of Petitioner's travel documents. The Vietnamese government makes the ultimate decision about whether to issue travel documents and has significant discretion in its decision. [Dkt. 11-4 ¶¶ 1-17]; see Nguyen v. Hyde, 788 F. Supp. 3d at 151 ("Vietnam has total discretion whether to issue a travel document to any individual."). Respondent has not provided any individualized evidence that the Vietnamese government is likely to exercise their discretion to accept Petitioner's application. The lack of individualized evidence is particularly relevant in this case, because Petitioner has a criminal history, no living relatives in Vietnam, and no

11

physical address in Vietnam. Each of these factors may make Petitioner less likely to be granted travel documents. See Nguyen v. Bondi, No. 2:25-CV-02024-TL, 2025 WL 3534168, at *6 (W.D. Wash. Dec. 10, 2025) (finding that ICE's numbers of pre-1995 arrivals were too vague to determine significant likelihood of removal in the reasonably foreseeable future because they did not indicate "whether any of those individuals had serious felony convictions and no remaining family ties to Vietnam.").

After the request has been sent to the Vietnamese government, there will be further delay. Respondents contend that once a travel document application is submitted to the Vietnamese government, it typically takes approximately thirty days to issue a travel document. [Dkt. 9 at 16]. Respondents' sole support for this estimate is an affidavit by an Assistant Field Officer Director of DHS, which states "I am aware that the Government of Vietnam typically takes approximately thirty (30) days to issue a travel document once it is presented." [Dkt. 9-1 ¶ 15]. The declaration provides no basis for this knowledge. In contrast, Petitioner submits the affidavit of an experience immigration attorney who specializes in working with Vietnamese noncitizens and has represented pre-1995 Vietnamese arrivals with final orders of removal who were released from immigration custody on an order of supervision. [Dkt. 11-4 ¶¶ 1-6]. Based upon this attorney's experience, Vietnam conducts detailed investigations into travel document requests and subjects pre-1995 arrivals to increased vetting. [Dkt. 11-4 ¶19]. This process takes many months, and Vietnam rarely issues travel documents within thirty days. [Dkt. 11-4 ¶19]; see also Tran v. Baker, 2025 WL 2085020, at *4 (Vietnamese noncitizen who entered the United States before 1995 waiting for issuance of travel documents after three and a half months of detention). Petitioner can be expected to wait in detention for several months, with no firm deadline for release.

Respondents attempt to distinguish this case from Nguyen v. Hyde in which another session of this District held that the deportation of a Vietnamese noncitizen who entered the United States prior to 1995 was not reasonably foreseeable because of (a) the Vietnamese Government's significant discretion in granting travel document requests, (b) ICE's failure to establish that noncitizens similarly situated to the petitioner had successfully been removed, and (c) the respondents failure to identify concrete steps taken to process the petitioner's particular travel document. 788 F. Supp. 3d at 151-52.  Although Respondents have presented more evidence of ICE's history of deportations to Vietnam, Respondents failed to provide any evidence that the Vietnamese government will exercise their discretion to issue Petitioner travel documents or identified pre-detention concrete steps that ICE took to obtain Petitioner's travel documents.  See Poeuv, 169 F. Supp. 3d at 300 (denying the government's motion to dismiss, in part, because "[i]t is unclear how much additional time will pass before the Cambodian government issues a decision or produces the required travel documents. Moreover, the Respondent has not submitted any information suggesting that Cambodia is likely to approve the Petitioner's repatriation.")

In light of the factors enumerated in Section 241.13(f), Respondents have not established that Petitioner was reasonably likely to be removed in the foreseeable future pursuant to 8 C.F.R. § 241.13(i)(2).  The Court declines to address Petitioner's due process arguments because Petitioner's petition is granted on independently dispositive grounds.

**C. Remedy**

When a noncitizen's detention is not in compliance with 8 U.S.C. § 1231 and its implementing regulations, the appropriate remedy is release from custody. See Tran v. Hyde,

13

2025 WL 3724853, at *4; Nguyen v. Hyde, 788 F. Supp. 3d at 152-53; Rombot, 296 F. Supp. 3d at 389.  Accordingly, the appropriate remedy in this case is release.

## IV.     CONCLUSION

For the foregoing reasons, Petitioner's Writ of Habeas Corpus [Dkt. 1] is **GRANTED**. Respondents are hereby **ORDERED** to release Petitioner pursuant to the order of supervision that was in effect prior to his re-detention.

**SO ORDERED.**

Dated: January 23, 2026                                  /s/ Angel Kelley
                                                        Hon. Angel Kelley
                                                        United States District Judge